**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

DAVID ALBERT BOWERS,               §
                                   §
                Petitioner,        §
                                   §
VS.                                §          CIVIL ACTION NO. H-04-1007
                                   §
DOUGLAS DRETKE,                    §
                                   §
                Respondent.        §

**MEMORANDUM AND OPINION**

Petitioner, David Albert Bowers,[1] sues under 28 U.S.C. § 2254, challenging a 2000 state felony conviction for a third offense of driving while intoxicated.  Respondent filed a motion for summary judgment, (Docket Entry No. 5), with a copy of the state court record. Bowers filed a response, (Docket Entry No. 6).  Based on careful consideration of the pleadings; the motion and response; the record; and the applicable law, this court grants respondent's motion and, by separate order, enters final judgment.  The reasons are set out below.

**I.      Background**

A jury found Bowers guilty of the felony offense of driving while intoxicated, third offense.[2]  The jury found true the enhancement paragraphs alleging to two prior convictions,

---

[1]      The trial transcript and appellate court records indicate that the petitioner's last name is "Bower."  Petitioner signs his name as "Bowers."  This court will refer to petitioner as "Bowers."

[2]      Cause Number 836374.

one in Cause Number 563385 for auto theft and one in Cause Number 590234 for possession of a controlled substance.  On March 1, 2000, the trial court sentenced Bowers to a sixty-year prison term.  The First Court of Appeals of Texas affirmed Bowers's conviction on May 31, 2002.  *Bowers v. State,* No. 01-00-00440-CR, 77 S.W.3d 514 (Tex. App. -- Houston [1st Dist.] 2002, pet. ref'd).  The Texas Court of Criminal Appeals refused Bowers's petition for discretionary review on October 30, 2002.  Bowers filed an application for state habeas relief on November 25, 2003, which the Texas Court of Criminal Appeals denied without written order, on findings of the trial court, without a hearing, on March 3, 2004.  *Ex parte Bowers,* Application No. 29,096-04 at cover.

On March 15, 2004, this court received Bowers's federal petition.  Bowers contends that his conviction is void for the following reasons:

(1)    He was denied due process because during voir dire, the prosecutor asked prospective jurors about prior convictions, if they could give a life sentence, and if they could convict based on evidence of medications causing intoxication.

(2)    He was denied due process because the prosecutor presented false evidence and inconsistent testimony.

(3)    He was denied due process because his statement was given in violation of state law.

(4)    The trial court responded to a question from the jury without notice to him.

(5)     He was denied due process because the results of the horizontal gaze nystagmus ("HGN") test were admitted into evidence.

(6)     He was denied due process because allegations of his prior convictions were read to the jury although he stipulated to the convictions.

(7)     Counsel rendered ineffective assistance by failing to:

    (A)     object to the prosecutor's use of hypothetical questions during voir dire;

    (B)     object to the prosecutor's use of false testimony;

    (C)     reurge the motion to suppress oral statements;

    (D)     object to the trial court's failure to inform Bowers or his counsel of the jury's question;

    (E)     object to admission of the results of an HGN test;

    (F)     cross-examine the witnesses;

    (G)     move to quash the indictment based on the fact Bowers was taking prescribed medications on the night of the offense;

    (H)     object to the jury instruction that allowed the jury to convict based on intoxication resulting from either alcohol or medication;

    (I)     object to the court's refusal to rule on the motion to suppress, motion to produce exculpatory and mitigating evidence, motion in limine on priors, and motion for discovery and inspection of evidence.

(8)     He was denied effective assistance of counsel on appeal based on all of the foregoing allegations.

(9)     There was insufficient evidence to enhance his conviction based on the prior

convictions because there was no proof that they were committed within 10

years of the instant offense.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, Attachment, pp. 11-27).

Respondent argues that claims 1, 3, 5, and 6 are procedurally barred.  (Docket Entry

No. 5, Respondent's Motion for Summary Judgment, pp. 4-5).  Under the procedural default

doctrine, a federal court may not consider a state prisoner's federal habeas claim when the

last state court to consider the claim expressly and unambiguously based its denial of relief

on an independent and adequate state procedural default.  *See Coleman v. Thompson*, 501

U.S. 722, 729 (1991); *Haley v. Cockrell*, 306 F.3d 257, 263-64 (5th Cir. 2002), *cert. granted*,

540 U.S. 945 (2003); *Johnson v. Puckett*, 176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. Texas*,

169 F.3d 295, 300 (5th Cir. 1999).  Under Texas law, a writ of habeas corpus cannot be

sought based on claims that could have been raised on appeal but were not.  *Ex parte

Sanchez*, 918 S.W.2d 526, 527 (Tex. Crim. App. 1996); *Ex parte Banks*, 769 S.W.2d 539,

540 (Tex. Crim. App. 1989).  The state habeas court relied on this procedural default to deny

relief on the grounds Bowers raises in this case as one, three, five, and six.  This state

procedural rule, firmly established and regularly followed by Texas courts, is an adequate

state ground to support the state court's denial of habeas relief and is independent of federal

law.  *See Coleman*, 501 U.S. at 729.

Federal habeas corpus relief is unavailable in the face of an adequate and independent

state procedural default unless the petitioner can show either cause for the default and actual

prejudice, or that the federal court's failure to consider the claim will result in a miscarriage of justice. This second ground requires the petitioner to show that he is actually innocent of the crime for which the sentence was imposed. *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Coleman*, 501 U.S. at 750; *Haley*, 306 F.3d at 263-64; *Finley v. Johnson*, 243 F.3d 215, 219-20 (5th Cir. 2001). Bowers argues that his appellate counsel was ineffective by failing to raise these issues on direct appeal, excusing the procedural default. (Docket Entry No. 6, Petitioner's Response, p. 2). In certain circumstances, counsel's ineffectiveness in failing to preserve a claim for review in state court will excuse a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

In the interest of judicial economy, this court will consider the merits of each of Bowers's claims.

## II.     The Applicable Legal Standards

Bowers's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

In ruling on a motion for summary judgment, this court views the evidence through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986). Under the AEDPA, the prism of the substantive evidentiary burden differs

5

depending upon whether the issue is one of law, fact, or both.  *See Drinkard,* 97 F.3d at 767-68.  The AEDPA provides as follows, in pertinent part:

>  (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)
>
> > (1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme

6

Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000). Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Therefore, § 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, they must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

As a *pro se* petitioner, Bowers's petition is construed liberally and is not held to the same stringent and rigorous standards as are pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

### III.   The Record

The record discloses the following facts.  On the night of November 17, 1999, Officer Renee Huff with the Harris County Constable's Office was on patrol when she noticed a vehicle traveling unusually slowly.  (Reporter's Record, Vol. III, pp. 14-16).  Officer Huff began to follow the vehicle.  She saw the vehicle swerving toward the ditch adjacent to the roadway.  (*Id*. at 16).  At one point, the vehicle swerved so badly that it caused an oncoming vehicle to swerve away from it. (*Id*. at 17).  Officer Huff turned on her patrol car's emergency lights to signal the vehicle to stop.  After passing several possible locations to stop, the vehicle eventually pulled over into the parking lot of a fast food restaurant.  (*Id*. at 18-19).

Officer Huff stopped her patrol car, got out, and walked up to the driver's side of the vehicle.  (Reporter's Record, Vol. III, p. 20).  The driver rolled his window down.  Officer Huff could immediately smell a strong odor of an alcoholic beverage.  (*Id*.).  The driver was slouched down, his shirt was wrinkled, his eyes were bloodshot, and he appeared tired.  (*Id*.). Officer Huff asked for the driver's license and proof of insurance.  The driver began fumbling for those items.  (*Id*. at 21).  Officer Huff asked if the driver had had anything to drink; he said that he had not.  (*Id*.).  The driver was Bowers.

8

Officer Huff had Bowers step out of the vehicle.  He stumbled and staggered as he walked.  (Reporter's Record, Vol. III, pp. 21-22).  Officer Huff performed a horizontal gaze nystagmus test on Bowers.[3]  That test revealed that Bowers had ingested a significant amount of alcohol.  (*Id*. at 22-25).  Officer Huff had Bowers perform a walk-and-turn test.  Bowers performed poorly and was not even able to complete the test.  (*Id*. at 25-26).  Officer Huff was going to have Bowers perform another field sobriety test, but Bowers refused.  (*Id*. at 26).  Bowers did not complain of any physical injuries.  (*Id*. at 66).

Officer Huff believed that Bowers was intoxicated.  (Reporter's Record, Vol. III, pp. 66-68).  She arrested him for driving while intoxicated and placed him in the backseat of her patrol car.  (*Id*. at 26-30, 74-75).  Bowers asked Officer Huff to "cut him a break" or "cut him some slack" because he had to go to work on the following day.  (*Id*. at 27-29).

Officer Craig A. Hughes with the Harris County Constable's Office arrived to assist Officer Huff.  Hughes conducted an inventory of the vehicle that Bowers had been driving.  (Reporter's Record, Vol. III, p. 75).  Officer Hughes found a barbecue sauce bottle underneath the driver's seat.  The bottle contained whiskey.  (*Id*. at 75-76).  A plastic cup in the vehicle had also contained whiskey.  (*Id*. at 76-77).  Officer Hughes placed Bowers in the backseat of his patrol car, and he noticed that Bowers had difficulty in walking.  (*Id*. at 77-79).  Bowers never said that he had any physical injuries.  (*Id*. at 108).  Officer Hughes also noticed that Bowers smelled very strongly of alcohol.  (*Id*. at 78).  Bowers was slurring his

---

[3]        An HGN test uses eye movement as an indicator of alcohol consumption and intoxication.

words, and it was very difficult to understand him.  (*Id*. at 78).  Officer Hughes was of the opinion that Bowers was intoxicated.  (*Id*. at 95-96).

Officer Hughes transported Bowers to the police station.  (Reporter's Record, Vol. III, p. 79).  During the drive, Bowers told Officer Hughes that he was a working man.  (*Id*. at 83).  Bowers repeatedly requested that Officer Hughes "cut him a break."  (*Id*.).  Bowers also repeatedly asked the officer if he had any children.  (*Id*. at 83-84).  Officer Hughes noted that Bowers continually repeated the same questions over and over again.  (*Id*. at 84).

When they arrived at the police station, Officer Hughes told Bowers of the consequences of refusing to take a breath test, as required by TEX. TRANSP. CODE ANN. § 724.015 (Vernon 1999).  Bowers refused to take a breath test.  (Reporter's Record, Vol. III, pp. 85-91).  Officer Hughes told Bowers that he was under arrest for committing the offense of driving while intoxicated.  (*Id*. at 93).

Officer Hughes testified that based on his observation of Bowers, there was the strong odor of alcohol; Bowers had slurred speech, unsteady balance, and he swayed during the video.  Officer Hughes observed that Bowers had lost the normal use of his physical facilities.  Officer Hughes also determined that Bowers lost the normal use of his mental faculties, based on the statements Bowers made during the drive to the police station.  Bowers had difficulty in answering standard questions about his address and telephone number.  Officer Hughes smelled the alcohol and saw an open container of alcohol in the cab of the truck.  Officer Hughes testified that the impairments were due to alcohol.  (Reporter's Record, Vol. III, p. 96).

The defense presented the testimony of David Edward Bowers, an unrelated coworker of Bowers.  (Reporter's Record, Vol. IV, pp. 4-5).  While at work on November 17, 1999, witness Bowers observed that defendant Bowers had a swollen leg and trouble walking.  (*Id*. at 13-14).  After working together that day, defendant Bowers invited witness Bowers to dinner.  (*Id*. at 15).  Defendant Bowers went to pick up witness Bowers from his home. Witness Bowers brought a bottle of Jim Beam in a barbecue bottle and a cup containing a drink.  (*Id*. at 18).  Witness Bowers explained that he planned to go over to defendant Bowers's home after dinner and have a few drinks.  Neither man had any alcoholic beverages during dinner.  (*Id*. at 20).  After dinner, defendant Bowers's leg was bothering him and he did not want to go out for drinks.  (*Id*. at 21-22).  Defendant Bowers had been in a car accident at the end of September and injured his knee.  Witness Bowers offered to drive defendant Bowers's truck to witness Bowers's home.  (*Id*. at 22).  Witness Bowers forgot to take the bottle of Jim Beam and the cup containing the drink with him when he got out of the truck.  (*Id*. at 24).  Defendant Bowers was driving was driving from witness Bowers's home to his own home when Officer Huff arrested him on FM 1960 and Veteran's Memorial.

## IV.   The Claim Based on the Prosecutor's Use of Hypothetical Situations During Voir Dire

Bowers complains of the prosecutor's use of hypotheticals and related questions during the voir dire examination.  Bowers asserts that the prosecutor improperly asked the jury to commit to a particular course of action and effectively eliminated the need to prove

the two prior convictions and intoxication from the use of alcohol.  Bowers contends that any sign of intoxication was due to prescription medications, not alcohol.

The Texas Supreme Court has stated that the scope of a permissible voir dire examination is necessarily broad to enable litigants to discover any bias or prejudice so that they may make either challenges for cause or peremptory challenges.  *See, e.g., Babcock v. Northwest Memorial Hosp*., 767 S.W.2d 705, 709 (Tex. 1989) ("A broad latitude should be allowed to a litigant during voir dire examination. This will enable the litigant to discover any bias or prejudice by the potential jurors so that peremptory challenges may be intelligently exercised.").  In criminal cases, questions that are not intended to discover bias or prejudice, but rather seek to determine how jurors would respond to the anticipated evidence and to commit them to a specific verdict based on that evidence, are not proper. *Atkins v. State*, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997); *Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991) ("an attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts").

The defendant has a constitutional right to a trial "by an impartial jury."  U.S. CONST. AMEND. VI ("In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury of the State and district wherein the crime shall have been committed"); TEX. CONST. art. 1, § 10 ("In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury").  "Commitment" questions require a potential juror to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all the evidence in context.  An improper commitment question

attempts to create a bias or prejudice before the juror has heard the evidence.  A proper voir dire question attempts to discover a potential juror's preexisting bias or prejudice.  *Sanchez v. State*, 165 S.W.3d 707 (Tex. Crim. App. 2005).

In *Standefer v. State*, the Texas Court of Criminal Appeals set out a test for determining when a voir dire question calls for an improper commitment.  59 S.W.3d 177, 179-184 (Tex. Crim. App. 2001).  First, trial courts must determine whether a particular question is a commitment question.  *Id*. at 179.  A commitment question is a question that "commit[s] a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact."  *Id*.  Second, the court must decide whether the question gives rise to a valid challenge for cause.  *Id*. at 181- 82.  Third, the court must then determine whether the question includes only those facts necessary to test whether a prospective juror is challengeable for cause.  *Id*.  The court summarized:

> So, the inquiry for improper commitment questions has two steps: (1) Is the question a commitment question, and (2) Does the question include facts – and only those facts – that lead to a valid challenge for cause?  If the answer to (1) is "yes" and the answer to (2) is "no", then the question is an improper commitment question, and the trial court should not allow the question.

*Id*. at 182-83.

Bowers first challenges a portion of the court's explanation of the voir dire process:

> COURT: They are going to need to answer -- get from each of you a commitment even though it's on a row by row, yes, I can follow that law or no, I cannot.  It may be on a law they hadn't thought about.  Maybe on a defendant not testifying.  Can you

13

decide the case without that interfering in your judgement? . . .
We are going to ask you to commit.

(Reporter's Record, Vol. II, pp. 20-21).  The court did not pose a question that required the jury panel to commit to a particular course of action based on certain facts.  The court was explaining the need to listen to the questions of the prosecutor and defense counsel and answer truthfully.

During voir dire, the prosecutor explained that intoxication can be proven by an elevated blood alcohol level or a loss of physical and mental faculties.  The prosecutor told the venire panel that they had to look at all the evidence, such as field sobriety tests.

Bowers challenges the prosecutor's questions about prospective jurors' ability to identify intoxication using a hypothetical question involving a person who had a few beers after work and drove home.  The prosecutor explained that this hypothetical person was not sick.  The prosecutor asked the prospective juror:

> MR. METZGER:  You need to make a decision.  You don't need to be an expert.  Once again timing a little off, reaction time a little slower.  It's due to the alcohol.  With that being said, would you say he's intoxicated?
>
> JUROR CLARK:  Yes.
>
> MR. METZGER:  Why is that?
>
> JUROR CLARK: Because at that point an explanation was given.
>
> MR. METZGER:  As far as why?
>
> JUROR CLARK:  Yes.

14

(Reporter's Record, Vol. II, p. 45).

The prosecutor's questions about whether a prospective juror could distinguish degrees of intoxication were not improper commitment questions.  The prosecutor was attempting to discover the venire panel's preexisting bias or prejudice based on preconceived ideas about what could be considered intoxication.

Finally, Bowers complains of the prosecutor's question based on prior convictions.

> MR. METZGER: This particular charge is by drinking and driving.   But a person might have all sorts of priors. Everything's hypothetical. We can't go into the facts of this case, as the Judge told you. You may learn all sorts of things about a person, about things that happened before with that person. And so we're asking, can you imagine a situation where you would give the upper end?
>
> VENIREPERSON: Okay.

(Reporter's Record, Vol. II, p. 62).

> MR. METZGER :  Now, in certain situations the State may show that a person has two prior pen trips so in that sense, it could be a 25 to life and that's why we're asking, hypothetically, can you consider the full range of punishment?
>
> VENIREPERSON:  Yes.

(Reporter's Record, Vol. II, pp. 63-64).

The prosecutor explained that for some offenses, prior convictions can be used to elevate an offense from a misdemeanor to a felony.  The prosecutor cautioned that the evidence of prior convictions could not be used to establish guilt in the current case.

The prosecutor explained that a third DWI offense is punishable with a sentence of 2 to 10 years and a fine of $10,000.  He explained that for a person who is charged with a third degree felony and who has two prior felony convictions, the sentence range is 25 years to life.  The prosecutor asked if the panel could consider the full range of punishment.  The prosecutor's questions about the range of punishment was not an improper commitment question.

A federal habeas court reviewing claims of improper argument applies "the narrow [standard] of due process, and not the broad exercise of supervisory power."  *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974)).  It "is not enough that the prosecutor's remarks were undesirable or even universally condemned."  *Darden,* 477 U.S. at 181.  Bowers must show that the comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id*; *Ward v. Whitley,* 21 F.3d 1355, 1364 (5th Cir. 1994), *cert. denied,* 513 U.S. 1192 (1995).  The relevant factors to consider are: (1) the magnitude of the prejudicial effect; (2) the efficacy of any cautionary instruction; and (3) the strength of the evidence supporting the defendant's guilt.  *United States v. Andrews,* 22 F.3d 1328, 1341 (5th Cir. 1994).

The record does not establish that the trial court or the prosecutor made improper efforts to derive commitments from the jury based on specific factual situations.  Bowers is not entitled to habeas relief on the claim of improper commitment questions.

**V.     The Claim Based on the Prosecutor's Alleged Use of Perjured Testimony**

Bowers argues that the State elicited perjured testimony from Officer Huff and that the State knew the testimony was false.  Bowers points to inconsistencies in the testimony offered by Officers Huff and Hughes about: whether Officer Huff's vehicle was perpendicular to or directly behind Bowers's vehicle when he was arrested; whether Officer Huff or Officer Hughes was the primary arresting officer; whether there was an optimal distance between the pen and Bowers's eye in the HGN test; and whether Officer Huff observed Bowers remain in a single lane.  Bowers asserts that the prosecutor's use of conflicting testimony created confusion.

"A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected."  *Pyles v. Johnson,* 136 F.3d 986, 996 (5th Cir.), *cert. denied,* 118 S. Ct. 2338 (1998).  To obtain a reversal based upon a prosecutor's use of perjured testimony or failure to correct such testimony, a habeas petitioner must demonstrate that: (1) the testimony was actually false; (2) the State knew it was false; and (3) the testimony was material.  *See id.*

Bowers does not plead or present facts to support his claim that either Officer Huff or Officer Hughes gave false testimony, except to deny the truth of their statements.  The matters identified as inconsistent are not material differences in the witnesses's accounts. The trial testimony presented a credibility question for the jury.  *Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990); *Little v. Butler,* 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by the trier of fact and do not establish that

17

certain testimony was perjured).   Bowers fails to plead or prove facts to support his contention that the prosecution knew that the testimony of Officers Huff and Hughes was false.   *Little,* 848 F.2d at 76 (denying habeas petition because, even assuming that certain testimony was false, there was no proof of prosecutor's knowledge of its falsity).

On habeas review, the state trial court found that Bowers failed to allege and prove any facts that the prosecutor knowingly offered perjurious testimony.   *Ex parte Bowers,* Application No. 29,096-04 at 57, Finding #4.  The Texas Court of Criminal Appeals denied habeas relief.  The state court's decision to deny relief was not contrary to clearly-established federal law as determined by the Supreme Court of the United States.   28 U.S.C. § 2254(d)(1).  Bowers's claim for habeas relief based on the use of perjured testimony lacks merit.  No habeas relief is warranted on this ground.

## VI.   The Claim Based on Admission of Self-Incriminating Statements

Bowers asserts that several trial court errors made the proceedings against him unfair. When a federal court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is so egregious that the entire trial is fundamentally unfair.  *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied,* 508 U.S. 978 (1993).  "A state court's evidentiary ruling presents a cognizable habeas claim only if it runs afoul of a specific constitutional right or renders the trial fundamentally unfair."  *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994), *cert. denied,*  513 U.S. 1163 (1995).  The challenged evidence must be a crucial, critical, or highly significant factor in the context of the entire case.  *Jernigan v. Collins*, 980 F.2d at 298; *Bridge v. Lynaugh,* 838

F.2d at 772; *Thomas v. Lynaugh,* 812 F.2d 225, 230 (5th Cir.), *cert. denied*, 484 U.S. 842 (1987).  The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted.  *See Guidroz v. Lynaugh,* 852 F.2d 832, 835 (5th Cir. 1988); *Rogers v. Lynaugh,* 848 F.2d 606, 609 (5th Cir. 1988).

Bowers asserts error in admitting statements he made following his arrest.  Officer Hughes testified that Bowers repeatedly asked if the officer would cut him a break and whether the officer had any children.  Bowers argues that Officer Hughes never administered *Miranda* warnings before questioning him in the back of the police car.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, pp. 15-16).  Bowers states that counsel filed a motion to suppress oral statements, but the judge never signed the order.  Counsel objected before the admission of the statement, but the objection was overruled.

It is well established that "the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning."  *United States v. Gonzales,* 121 F.3d 928, 939 (5th Cir. 1997) (quoting *Illinois v. Perkins,* 496 U.S. 292, 296 (1990)).  The Supreme Court has defined "custodial interrogation" as "'questioning initiated by law enforcement officers after a person has been taken into custody . . . .'" *Gonzales*, 121 F.3d at 939 (quoting *Miranda v. Arizona,* 384 U.S. 436, 444 (1966)).  Volunteered statements do not violate the Fifth Amendment and are not subject to *Miranda* warnings.  *See Miranda v. Arizona,* 384 U.S. at 478.

Article 38.22 of the Texas Code of Criminal Procedure sets out certain requirements for admitting an accused's oral and written statements when those statements are made as a result of a custodial interrogation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22. (Vernon 1979 & Supp. 2004-2005). A statement that does not stem from custodial interrogation does not have to meet the requirements of article 38.22. *Id*. art. 38.22, § 5 (Vernon 1979) (noting that nothing in the article "precludes admission of . . . a statement that does not stem from custodial interrogation"). Custodial interrogation occurs when a defendant is in custody and exposed "to any words or actions on the part of police . . . that [the police] should know are reasonably likely to elicit an incriminating response." *Roquemore v. State,* 60 S .W.3d 862, 868 (Tex. Crim. App. 2001) (citing *Rhode Island v. Innis,* 446 U.S. 291, 300-01 (1980)).

In this case, Bowers was in custody at the time he made the statements to Officer Hughes. To exclude his statements under article 38.22, Bowers must also have been subjected to interrogation. The issue is whether Officer Hughes interrogated Bowers.

The record shows that Officer Hughes handcuffed Bowers and placed him in the back of his patrol car. (Reporter's Record, Vol. III, p. 78). During the fifteen-minute trip from the restaurant parking lot to the police substation, Officer Hughes testified that Bowers repeatedly said that he was a working man and asked Officer Hughes to "cut him a break." Officer Hughes explained that Bowers would ask the question, Officer Hughes would answer, and Bowers would repeat the same question 30 to 45 seconds later. (Reporter's Record, Vol. III, p. 83). Officer Hughes thought this was unusual. (*Id*. at 84).

20

The record shows that Bowers's statements to Officer Hughes were not the product of custodial interrogation.  Rather, the record shows that Bowers made unsolicited statements that he was a working man and requests that Officer Hughes should give him a break. Bowers's statements did not arise from any "interrogation."  *See Innis,* 446 U.S. at 300-01 ("the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself").

While in the patrol car, Officer Hughes tried to gather limited information for booking, such as Bowers's address and telephone number.  Because Bowers's multiple spontaneous self-incriminating statements went beyond the scope of Officer Hughes's questions and were not the product of custodial interrogation, Officer Hughes was not required to comply with *Miranda* and Article 38.22.  *Innis*, 446 U.S. at 301 (police cannot be held accountable for the unforeseeable results of their words or actions; therefore, definition of interrogation extends only to "words or actions on the part of police officers that they should [know are] reasonably likely to elicit an incriminating response"); *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990) (questions attendant to booking or "to the police's administrative concerns" fall outside *Miranda*'s protections); *McCambridge v. State*, 712 S.W.2d 499, 505 (Tex. Crim. App. 1986) ("[q]uestioning 'normally attendant to arrest and custody' is not interrogation").  The trial court did not abuse its discretion in denying Bowers's motion to suppress and admitting evidence of his oral statement.

Even if admission of these statements was erroneous, Bowers has not shown that this evidence played a "crucial, critical, and highly significant" role in the jury's determination. The jury heard eyewitness evidence from Officer Huff and Officer Hughes that based on their observations, they concluded that Bowers had lost his normal use of his physical and mental faculties due to alcohol.  Bowers is not entitled to habeas relief on this claim.

## VII.   The Claim Based on the Trial Court's Response to a Jury Note

Bowers complains that the trial court failed to give notice that the jury had asked a question.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, Attachment, p. 16). Bowers complains that the judge did not make a good faith effort to locate Bowers, who was in the holding cell when the jury sent the note.

The jury asked:

> "1. Was there any evidence of the defendant taking medication that night prior to the incident, two hours prior?
>
> 2. View the video
>
> 3. Reread doctor's report
>
> 4. All exhibits."

(Clerk's Record, Vol. I, p. 59).  The judge responded: "you have heard and seen all the evidence in the case."   Bowers complains that to object to the proposed response or to ask to provide the jury with pages 41 to 44 of the Clerk's Record or provide a specific answer. Bowers argues that the judge should have provided the jury with: (1) an affidavit of Angela Nason, custodian of records for Dr. Donald Hanser; (2) a medical report with medication

22

data; (3) a radiology report; and (4) a medical report with clinical data.  Bowers argues that

if this evidence had been provided to the jury, the result of the trial would have been

different.  (Docket Entry No. 6, Petitioner's Response, pp. 6-7).

A state prisoner seeking federal court review of his conviction under 28 U.S.C.

Section 2254 must assert a violation of a federal constitutional right.  *Lawrence v. Lensing,*

42 F.3d 255, 258 (5th Cir. 1994).  Federal habeas corpus relief will not issue to correct errors

of state constitutional, evidentiary, statutory, or procedural law, unless a federal issue is also

presented.  *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).  The question before a federal

habeas court is not whether the state court correctly applied its own interpretation of state

law; rather, the question is whether the petitioner's federal constitutional rights were violated.

*Neyland v. Blackburn,* 785 F.2d 1283, 1293 (5th Cir.), *cert. denied*, 479 U.S. 930 (1986).

The issue before this court is not whether the Texas courts properly applied state-law

principles during Bowers's trial or postconviction proceedings, but whether Bowers's federal

constitutional rights were violated.

Even viewed on the merits, this claim lacks merit.  Bowers complains that the trial

court violated article 36.27 of the Texas Code of Criminal Procedure by answering the jury

note without Bowers or his counsel.  Texas law provides:

> When the jury wishes to communicate with the court, it shall so
> notify the sheriff, who shall inform the court thereof.  Any
> communication relative to the cause must be written, prepared
> by the foreman and shall be submitted to the court through the
> bailiff.  The court shall answer any such communication in
> writing, and before giving such answer to the jury shall use
> reasonable diligence to secure the presence of the defendant and

> his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper.  The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.  All such proceedings in felony cases shall be a part of the record and recorded by the court reporter.

TEX. CODE CRIM. PROC. ANN. art. 36.27 (Vernon Supp. 2004-05).

Giving additional instructions to a jury without complying with the statutes requiring such communication to be in open court and in the presence of the defendant constitutes reversible error.  *Smith v. State*, 513 S.W.2d 823, 829 (Tex. Crim. App. 1974).  However, a defendant must bring this error to the court's attention by objection or formal bill of exception.  Otherwise, a reviewing court presumes the trial court's actions to be consistent with the statute.  *See Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995); *Williamson v. State*, 771 S.W.2d 601, 605 (Tex. App. - Dallas 1989, pet. ref'd).  Other than Bowers's conclusory allegation, nothing in the record shows that the trial court failed to use reasonable diligence to secure the presence of Bowers and his counsel before answering the jury note.  The record does not show that Bowers objected to the trial court's response or made a bill of exceptions to the response.  Nothing in the record reflects either Bowers's presence or lack of presence – or that of his counsel – when the court communicated to the jury.  Accordingly, this court presumes the trial court complied with the statutes.

Bowers asserts that the trial court should have provided the jury with his medical records.  The medical records show that on November 4, 1999, Bowers complained of pain in his right foot and knee and that he was using crutches.  Bowers received a prescription for Vicodin, Motrin, and Tylenol.  The radiology report from October 27, 1999 showed no evidence of acute venous thrombosis or obstruction.  The records relating to treatment Bowers received in September and October 1999 are illegible.  These documents were part of the defense exhibits and before the jury.  (Reporter's Record, Vol. VI, Defendant's Ex. 1).  Nothing in the record suggests that the jury did not have access to all of the defense exhibits during deliberations.  During the trial, the defense presented testimony by Bowers's coworker about Bowers's car accident in September 1999, the injuries to Bowers's knee, the trouble Bowers had in walking, and the complaints of pain he made on the day of the offense.  Bowers has not shown that providing the jury with another copy of these medical records would have altered the outcome of his trial.  Bowers is not entitled to habeas relief on this claim.

## VIII.  The Claim Based on Admission of the HGN Test Results

Bowers complains that the trial judge erred in admitting "novel" scientific evidence in the form of testimony about the Horizontal Gaze Nystagmus ("HGN") test and asserts it was unreliable, confusing, and misleading.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, Attachment, pp. 18-19).  Bowers argues that the trial court should have suppressed the results of the HGN test because there was insufficient evidence that the officer administered the test properly.  (Docket Entry No. 1, Petition for a Writ of Habeas

25

Corpus, Attachment, p. 33).  Bowers argues that Officer Huff's expert testimony about the HGN test was not reliable because there was no evidence that the test was valid and administered properly.

Officer Huff testified that she took a forty-hour course at Texas A&M University on how to administer an HGN test.  She had received a practitioner's certification to administer the test from the State of Texas.  *Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994); *Held v. State*, 948 S.W.2d 45, 51 (Tex. App. - Houston [14th Dist.] 1997, pet. ref'd).

Bowers asserts that the evidence failed to show that Officer Huff administered the HGN test properly.  Bowers argues that the officer testified that she observed a total of six clues on the test, she did not know that there was a set distance at which to perform the test.

In administering an HGN test, an officer must look for the following in each eye: 1) lack of smooth pursuit; 2) distinct nystagmus at maximum deviation; and 3) onset of nystagmus prior to 45 degrees.  *Compton v. State*, 120 S.W.3d 375, 377 (Tex. App.-Texarkana 2003, pet. ref'd).  Slight variations in the test do not make the result inadmissible. *Id*. at 378.  Officer Huff testified that the HGN test uses the amount of movement of the eyes as an indicator of alcohol consumption.  (Reporter's Record, Vol. III, p. 22).  She first checked for equal pupil size and tracking to ensure that Bowers could focus on an object. Next, she looked for smooth pursuit. She then checked for distinct nystagmus at maximum deviation.  Officer Huff observed jerking of both eyes, which presented two indications of intoxication.  Finally, the officer checked for onset nystagmus prior to 45 degrees.  In all, she observed six indications.  Officer Hughes, in summary, described: 1) how each test was

performed; 2) what she was looking for (*i.e.*, jerking movements); and 3) how she counted

six indications.  (Reporter's Record, Vol. III, pp. 24-25).  The trial court had a reasonable

basis to conclude that the requirements of *Compton* were satisfied.  Bowers does not point

to any specific instances in which the officer failed to properly perform the tests.

Bowers exhibited six clues on the HGN test, which has been recognized as a reliable

indicator of intoxication.  *See Emerson v. State*, 880 S.W.2d 759, 768 (Tex. Crim. App.

1994), *cert. denied*, 513 U.S. 931 (1994).  Bowers had not suffered any head or eye injuries

that could affect the reliability of the HGN test, and none of his physical impairments would

have affected its accuracy.  In addition, the evidence as to the odor of alcohol and inability

to pass field sobriety tests, as well as his behavior, shows intoxication.  *Ford v. State*, 129

S.W.3d 541, 551 (Tex. App. 2003); *Orrick v. State*, 36 S.W.3d 622, 624 (Tex. App. 2000).

Bowers is not entitled to relief on the claim that the trial court erred in admitting the

results of the HGN test.

## IX.    The Claim Based on the References to Prior Convictions

Bowers complains that the prosecutor repeatedly told the jury about his prior

convictions.  Before trial, Bowers signed a stipulation of evidence, which Bowers argues

eliminated the need for the prosecutor to prove prior convictions.  Bowers alleges that the

judge, the prosecutor, and the defense counsel mentioned the prior convictions to the jury 34

times.

The record shows that defense counsel made a motion in limine based on the

stipulation to prior DWI convictions.  Counsel argued that the prosecutor should not be

allowed to mention Bowers's prior DWI convictions after the defense had stipulated to those prior convictions.  The trial judge overruled the objection and found that the prosecutor could read the jurisdictional paragraphs to the jury.  (Reporter's Record, Vol. II, pp. 10-12).

At the beginning of the State's case-in-chief, the prosecutor offered the stipulation to the prior DWI convictions.  Defense counsel made no objection.  In the stipulation, Bowers agreed that on June 7, 1994 in the 208th Judicial District Court of Harris County, Texas, he was convicted of driving and operating a motor vehicle while intoxicated (Cause Number 659052), and that on October 5, 1987, in the County Criminal Court Number 6 of Harris County, Texas, he was convicted of driving and operating a motor vehicle while intoxicated (Cause Number 954581).  (Reporter's Record, Vol. III, p. 12).  Bowers complains that the court, the prosecutor, and defense counsel made improper references to his prior convictions and offers several citations to the record.

The references to the prior convictions occurred during the voir dire portion of the trial.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 21).  The prosecutor specifically admonished the jury panel that the prior convictions could only be considered for jurisdictional purposes and none other.  The record shows that the prosecutor read the stipulation of evidence at the beginning of the guilt/innocence phase of trial.  Bowers's own pleadings suggest that the allegedly improper mentions of his prior convictions took place during voir dire, before the stipulation was entered and read, not during the guilt/innocence phase of trial.  Bowers is not entitled to relief on this claim.

28

**X.      The Claim Based on Sufficiency of the Evidence**

Bowers argues that TEX. CODE CRIM. PROC. 49.09(e) requires the prosecutor to prove that one of the alleged prior DWI offenses used for enhancement purposes must have been committed within ten years of the charged offense.  Bowers stipulated to the prior DWI offenses even though the commission dates were not included.  Bowers argues that in *Apprendi v. New Jersey*, and *Ring v. Arizona*, the Supreme Court held that any fact that increases the penalty for a crime beyond the statutory maximum, other than a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt.  Bowers argues that the commission date of the prior conviction was not alleged or shown to be within ten years of the charged offense.

Section 49.04 provides that a person commits DWI by operating a motor vehicle while intoxicated.  TEX. PEN. CODE ANN. § 49.04(a) (Vernon Supp. 2002).  The offense is a Class B misdemeanor unless it's an offense under section 49.09.  *Id*. § 49.04(b).  Section 49.09(b) provides that a defendant may be tried as a felon if he has two prior convictions for DWI. Act of April 22, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3697 (amended 2001) (current version at TEX. PEN. CODE ANN. § 49.09(b) (Vernon Supp. 2002)).  Section 49.09(e) contains a remoteness limitation that requires one of the prior convictions to have been committed within 10 years of the present offense.  Act of April 4, 1995, 74th Leg., R.S., ch. 318, § 21, 1995 Tex. Gen. Laws 2743 (amended 2001) (current version at TEX. PEN. CODE ANN. § 49.09(e)(1)(2) (Vernon Supp. 2002)).  The prior intoxication-related offenses

29

are elements of the offense of DWI.  *Gibson v. State*, 995 S.W.2d 693, 696 (Tex. Crim. App.

1999).

The State's indictment alleged two DWI convictions to enhance the offense to a third

degree felony, but it did not contain the dates of commission for the prior DWI convictions.

The State did not introduce evidence of the commission dates of the prior DWI offenses

during the guilt/innocence stage of trial.  Bowers pleaded "true" to the two enhancement

paragraphs alleging the prior DWI convictions.  The enhancement paragraphs and stipulation

included the dates of conviction – June 7, 1994, and October 5, 1987 – but not commission.

On appeal, Bowers argued that the State presented legally insufficient evidence of

felony DWI because there was no evidence of the commission dates of the prior DWI

convictions.[4]  The state appellate court rejected this argument:

> Here, appellant not only pled true to the enhancement
> allegations, but also stipulated to the admission of the
> convictions.  Thus, with appellant's consent, the State proved
> what it was required to prove.  *See* Act of April 22, 1993, 73rd
> Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3697
> (amended 2001); *Tamez v. State*, 11 S.W.3d 198, 202 (Tex.
> Crim. App. 2000) (["W]here the defendant agrees to stipulate to
> the two previous DWI convictions . . . the proper balance is
> struck when the State reads the indictment at the beginning of

---

[4]        Bowers cited *Renshaw v. State*, 981 S.W.2d 464 (Tex. App.-Texarkana 1998, pet.
ref'd) and *Smith v. State*, 1 S.W.3d 261 (Tex. App.-Texarkana 1999, pet. ref'd).  In *Smith v. State*,
158 S.W.3d 463 (Tex. Crim. App. 2005), the Texas Court of Criminal Appeals considered the
situation of:  "When a defendant stipulates to the two prior convictions necessary to establish the
predicate for felony DWI, can an appellate court properly hold the evidence legally insufficient on
the ground that one of the prior convictions is too remote in time and the record contains no
evidence of an intervening conviction?  We hold that the answer is 'no' and reverse the judgment
of the Court of Appeals."

> trial, mentioning only the two jurisdictional prior convictions,
> but is foreclosed from presenting evidence of the convictions
> during its case-in-chief."). Accordingly, we conclude that a
> rational trier of fact could have found beyond a reasonable doubt
> that appellant had two prior DWI convictions. *See Jackson*, 443
> U.S. at 319, 99 S. Ct. 2781, 61 L. Ed.2d 560. We overrule
> appellant's sole point of error.

*Bowers v. State,* No. 01-00-00440-CR, 77 S.W.3d 514 (Tex. App.- Houston [1st Dist.] 2002,

pet. ref'd). The Texas Court of Criminal Appeals refused Bowers's petition for discretionary

review.

Bowers's argument that *Apprendi v. New Jersey* and *Ring v. Arizona* make this

conviction unconstitutional does not provide a basis for relief. *Screwier v. Summerlin*, 542

U.S. 348 (2004), the Supreme Court held that the procedural rule announced in *Ring v.

Arizona*, 536 U.S. 584 (2002), which was based on *Apprendi v. New Jersey*, did not apply

retroactively to cases on collateral review. *Schriro*, 124 S. Ct. at 2526. Bowers is not

entitled to relief on this claim.

## XI.    The Claim of Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that

his counsel's actions fell below an objective standard of reasonableness and petitioner

suffered prejudice as a result. *Strickland v. Washington,* 466 U.S. 668 (1984); *Martin v.

Cain,* 246 F.3d 471, 477 (5th Cir. 2001). The district court may dispose of a claim if counsel

either rendered reasonably effective assistance or no prejudice can be shown. A court

evaluating a claim of ineffective assistance need not address the reasonableness component

first.  If a petitioner fails to make one of the required showings, the court need not address the other.  *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy."  *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993).  If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed."  *Rector v. Johnson,* 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).

As to the prejudice portion of the inquiry, a convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  An attorney's strategic choices based on information supplied by the defendant and gathered from an investigation of the relevant law and facts "are virtually unchallengeable."  *Id.* at 691.

Bowers asserts that his trial counsel, David Singer, provided ineffective assistance at trial in nine respects.  The state habeas court concluded that the totality of the representation afforded Bowers was sufficient to protect his right to reasonably effective assistance of counsel.  *Ex parte Bowers,* Application No. 29,096-04 at 58.  Liberally construed, Bowers argues that the state habeas court's findings of fact should not be accorded a presumption of correctness.  (Docket Entry No. 6, Petitioner's Response, p. 3).

Bowers complains that the state habeas court did not conduct an evidentiary hearing. The record shows that Judge Joan Campbell presided over Bowers's trial, and she conducted the state habeas review.  The fact that the state court dismissed the habeas petition on the basis of the record, without granting an evidentiary hearing, does not disturb the presumption of correctness under section 2254(d).  The Fifth Circuit has consistently recognized that a state habeas court need not hold an oral evidentiary hearing.  *See May v. Collins,* 955 F.2d 299, 309-15 (5th Cir. 1992); *see also Sawyers v. Collins*, 986 F.2d 1493, 1504-05 (5th Cir. 1993) (presumption of correctness applied to factual findings made solely on the basis of affidavits); *Carter v. Collins,* 918 F.2d 1198, 1202 (5th Cir. 1990) (same); *Buxton v. Lynaugh*, 879 F.2d 140, 143-47 (5th Cir. 1989) (same).

The Fifth Circuit's prior decisions have characteristically involved cases in which the state habeas judge was the same judge who presided at trial, *see, e.g.*, *May,* 955 F.2d at 314; *Buxton,* 879 F.2d at 146.  *Carter v. Johnson*, 131 F.3d 452, 460 (5th Cir. 1997), *cert. denied,* 523 U.S. 1099 (1998).  The Fifth Circuit has recognized that "it is necessary to examine in each case whether a paper hearing is appropriate to the resolution of the factual disputes underlying the petitioner's claim."  *May*, 955 F.2d at 312.  The record shows that the facts were adequately developed to allow the state habeas court to make a factual determination.

The state habeas court's findings of fact are presumed correct, and Bowers has failed to rebut the presumption.  28 U.S.C. § 2254(d)(2).  As discussed more fully below, the state court's decision was a reasonable application of the law to the facts and was not contrary to clearly-established federal law as determined by the Supreme Court of the United States.

33

Bowers complains of his counsel's failure to object to the prosecutor's use of hypothetical questions during voir dire; object to the prosecutor's use of false testimony; reurge his motion to suppress oral statements; object to the trial court's failure to inform Bowers or counsel of the jury's question; and object to admission of the results of the HGN test. For the reasons discussed at length above, objections on these bases would have been futile. Counsel cannot be deficient for failing to press frivolous points. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Green v. Johnson,* 160 F.3d 1029, 1036-37 (5th Cir. 1998), *cert. denied,* 525 U.S. 1174 (1999) (citing *Sones v. Hargett,* 61 F.3d 410, 415 (5th Cir. 1995)).

Bowers next complains that his counsel failed to conduct adequate cross-examination of the witnesses. On cross-examination, counsel questioned Officer Huff about her preparation of the DIC24 report (Reporter's Record, Vol. III, p. 31); how long she had been a peace officer (*id*. at 33); how long she followed and observed Bowers before pulling him over (*id*. at 34); whether Bowers reported not having any injuries that would prevent him from performing the sobriety tests (*id*. at 47); the amount of training required to perform the HGN test (*id*. at 48-49); how far she held the pen from Bowers's eyes while performing the HGN test (*id*. at 50-51); and her experience in making DWI arrests (*id*. at 55). The record shows that counsel asked Officer Hughes about: his participation in the STEP program, which is designed to increase DWI enforcement (*id*. at 97-98); his familiarity with the area where the arrest took place (*id*. at 101); registration of the truck (*id*. at 103); the failure to take fingerprints from items found in the truck (*id*. at 104); the presence of crutches in the

34

truck (*id*. at 105); the lack of video equipment on the patrol vehicles (*id*. at 106-07); and training to perform the HGN test (*id*. at 107).  Counsel's questions were thorough and designed to cast doubt on the credibility and reliability of the State's witnesses.  Bowers does not explain what additional questions counsel should have posed, or how they would have altered the outcome of trial.

Bowers complains that counsel failed to move to quash the indictment, based on the fact that Bowers was taking prescribed medications on the night of the offense.  Bowers does not establish that any such motion would have been granted.  Bowers complains that counsel failed to object to the jury instruction that allowed the jury to convict based on intoxication resulting from either alcohol or medication.  The record shows that the charge defined "intoxicated" as not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body.  (Clerk's Record, Vol. I, p. 52).  This definition does not mention the introduction of medications.  An objection on this ground would have been futile.

Bowers faults counsel for failing to object to the court's refusal to rule on a motion to suppress, a motion to produce exculpatory and mitigating evidence, a motion in limine on priors, and a motion for discovery and inspection of evidence.  To show ineffective assistance of counsel based upon the failure to reurge motions, Bowers must show that the court would have granted such motions had counsel reurged them.  The failure to reurge a motion cannot prejudice the defendant unless the court would have granted the motion.

At a pretrial hearing, the prosecutor stated that the entire file was open to defense counsel. Defense counsel agreed that he had access to the file. (Reporter's Record, Vol. II, p. 4). The prosecutor stated that there was no exculpatory or mitigating evidence that was not part of the file. (*Id*. at 4-5). Defense counsel filed a motion in limine regarding the audio portion of the video tape. The court granted the motion and suppressed the audio portion. (*Id*. at 6). Defense counsel moved to suppress any oral statements by Bowers, referring specifically to the conversation between Bowers and the arresting officer. The trial court held a hearing and amended the motion. (Reporter's Record, Vol. III, pp. 79-83). During the pretrial hearing, defense counsel also urged his motion in limine concerning the stipulations to prior DWI convictions for jurisdictional purposes. (Reporter's Record, Vol. II, p. 8). The court overruled counsel's objections. (*Id*. at 11). The state trial court addressed the motions at issue during the pretrial hearing. Because Bowers has shown that defense counsel provided effective representation in filing and litigating the motions and has failed to show prejudice from counsel's failure to reurge the motions. This claim of ineffective assistance of counsel is without merit.

## XII.   The Claim of Ineffective Assistance of Appellate Counsel

Bowers complains that appellate counsel provided ineffective assistance by failing to raise several issues on appeal. (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, pp. 38-40).

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *See Evitts v. Lucey,* 469 U.S. 387 (1985). Bowers must allege and present facts that,

if proven, would show that his attorney's representation was deficient and that the deficient performance caused Bowers prejudice. *See Strickland,* 466 U.S. at 687-88, 692; *Jones v. Jones,* 163 F.3d 285, 300 (5th Cir. 1998).

The first element requires Bowers to show that his appellate counsel's conduct "fell below an objective standard of reasonableness." *United States v. Williamson,* 183 F.3d 458, 463 (5th Cir. 1999) (quoting *Strickland,* 466 U.S. at 688). This court's review is deferential, presuming that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal. *See Evitts,* 469 U.S. at 394; *West v. Johnson,* 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *See Evitts,* 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *See Strickland,* 466 U.S. at 690-91.

To show prejudice, Bowers must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones,* 163 F.3d at 302 (quoting *Strickland,* 466 U.S. at 694). Such a reasonable probability makes the proceeding unfair or unreliable, so as to undermine confidence in the outcome. *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993)).

This court has considered and rejected Bowers's claims based on ineffective assistance of trial counsel, prosecutorial error, and trial court error. Raising these claims on

appeal would have been frivolous.  *Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001) (finding that where each of the grounds underlying the alleged errors by counsel on appeal were found to lack merit, appellate counsel's failure to pursue relief on those bases does not constitute ineffective assistance of counsel since no prejudice resulted therefrom and because the reliability of the result of the appeal was not undermined thereby).

The record shows that appellate counsel argued that the evidence was legally insufficient to prove that Bowers committed felony DWI.  Bowers argued that the evidence was insufficient to prove that at least one of the DWI offenses alleged in the enhancement paragraphs was committed within ten years from the date of the charged offense, in compliance with Texas Penal Code section 49.09(e).  (Brief for Appellant, pp. 9-10). Counsel's decision not to argue claims based on ineffective assistance, trial court error, and prosecutorial misconduct falls within the wide range of reasonable professional assistance.

There is no showing of a reasonable probability that, even assuming appellate counsel made unprofessional errors, the result of the proceeding would have been different but for such errors.  *Wilson v. Cockrell*, 2003 WL 21672834 *11 (5th Cir. July 17, 2003); *Duhamel v. Collins,* 955 F.2d 962, 965 (5th Cir. 1992).  The state habeas court found that "applicant fails to allege and prove that his appellate attorney's performance fell below an objective reasonable standard under prevailing professional norms or that it was likely the outcome of the appeal would have been different had his appellate attorney argued what he now wishes that she had."  *Ex parte Bowers,* Application No. 29,096-04 at 58,  Conclusion #5.  The Court of Criminal Appeals explicitly based its denial of habeas relief on this finding.  These

credibility determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Bowers has not produced clear and convincing evidence to rebut these findings. The state court's decision as to the effective assistance of appellate counsel reasonably applied the law to the facts, consistent with clearly established federal law. Bowers has not shown a basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

## XIII.  Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 5), is GRANTED. Bowers's petition for a writ of habeas corpus is DENIED. This case is DISMISSED. Any remaining pending motions are DENIED as moot.

Under the AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has denied a claim on procedural grounds, however, the petitioner must also demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. As the Supreme Court made clear in its recent decision in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." When considering a request for a COA, "[t]he question is the

debatability of the underlying constitutional claim, not the resolution of that debate." *Id*. at

1042.

Because Bowers has not made the necessary showing, this court will not issue a COA.

SIGNED on August 25, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge